[No. AO20658. First Dist., Div. Four. Sept. 26, 1983.]

LYLY & SONS TRUCKING COMPANY et al.,
Cross-complainants and Appellants, v.
THE STATE OF CALIFORNIA, Cross-defendant and Respondent.

354

**COUNSEL**

John P. Coleman and Toy & Coleman for Cross-complainants and Appellants.

Robert F. Carlson, Lee Tyler, Robert J. DeFea and Kenneth G. Nellis for Cross-defendant and Respondent.

## OPINION

**POCHÉ, J.**—In announcing a rule of comparative negligence in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], the California Supreme Court candidly recognized that this innovation raised numerous collateral issues "[t]he most serious [of which] are those attendant upon the administration of a rule of comparative negligence in cases involving multiple parties." (*Id.*, at p. 823.) Later in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], a multiparty case, the high court held that although the doctrine of joint and several liability continued in full vigor (*id.*, at p. 590), there remains an avenue of relief for the joint tortfeasor who has paid more than his proportionate share of liability: he may pursue an indemnity action against his fellow tortfeasors on a comparative fault basis (*id.*, at pp. 591-598). The court emphasized, however, an important exception: a good faith settlement with the plaintiff releases a tortfeasor from any other tortfeasor's claim for indemnification. (At p. 604.)

This is the backdrop for the problem before us: how to divvy up in dollars the percentage of responsibility attributable to joint tortfeasors who have settled and thus are judgment proof. We hold that the sharing must be proportional to the remaining tortfeasors' degree of comparative fault.

### Review

In the early morning hours of January 27, 1978, David Forsyth, driving his own car, and Lawrence Lucier, his passenger, were returning from a meeting they had attended at the Santa Rosa Golf and Country Club (Country Club) on behalf of their employer, Anker-Lucier Mortuary. Both were seriously injured when Forsyth's car ran into the rear of a disabled tractor/trailer rig in the slow northbound lane on Highway 101 outside of Ukiah. The rig was owned by Lyly & Sons Trucking Company (Lyly & Sons) and was operated by its employee, Donald Gohl.

Separate personal injury actions were commenced by Forsyth and Lucier against Lyly & Sons, Gohl, and Country Club. Lucier also named Forsyth as a defendant in his action. A complaint in intervention for subrogation in each action was filed by California Compensation and Fire Company (California Compensation), the workers' compensation carrier for the employer of Lucier and Forsyth. In each action Lyly & Sons and Gohl filed a cross-

complaint for equitable indemnity against the State of California (state), which was not a party to either of the complaints. The indemnity cross-complaint alleged that the state had negligently maintained, designed and controlled the portion of Highway 101 so as to provide inadequate visibility to northbound travelers, and that the state's negligence had created a dangerous and defective condition of public property which had proximately caused plaintiffs' and intervener's injuries. Lyly & Sons asserted that in the event it was held liable for plaintiffs' and intervener's injuries, it was entitled to recover at least a portion of such damages from the state under the equitable indemnity principles enunciated in *American Motorcycle*.

The actions were consolidated in Sonoma County Superior Court. Prior to trial the personal injury actions were settled in good faith and releases were executed dismissing all the defendants named in the two complaints. The terms of the settlement were: Lucier received $835,000 ($800,000 from Lyly & Sons, $25,000 from Forsyth, and $10,000 from Country Club); Forsyth received $35,000 ($25,000 from Lyly & Sons and $10,000 from Country Club); and Lyly & Sons paid California Compensation $50,000. Thus, of the total settlement package of $920,000, Lyly & Sons paid $875,000.

Proceedings continued on Lyly & Sons' equitable indemnity cross-complaints against the state: the matter was presented to the trial judge for decision on the basis of an agreed statement of facts. ■■ ■■ It was stipulated that Lyly & Sons, the state, "and all other persons involved were negligent and their said negligence was a proximate cause of injuries" to Lucier, Forsyth and California Compensation; that the reasonable net damages to Lucier, Forsyth and California Compensation (after any setoffs and reductions allowable by law) amounted to $875,000; that the percentage of fault was: the state, 10 percent; Lyly & Sons and Gohl, 40 percent; and the others (Forsyth and Country Club) who were judgment proof,[1] 50 percent. This 50 percent was not further apportioned.

■ Lyly & Sons contends that the state's share of payment should be determined without reference to the judgment-proof tortfeasors; in other words, as between Lyly & Sons and the state the entire equation is their comparative fault. Under this theory since it was stipulated that the state's percentage of fault is 10 percent and that Lyly & Sons' is 40 percent, they should share liability on a ratio of 1 to 4.

---

[1]Both Forsyth and Country Club were "judgment proof" in the sense that neither was subject to liability in the indemnity cross-action because each had entered into good faith settlements in the main actions. A tortfeasor who has entered into a good faith settlement with the plaintiff is discharged from any claim for partial or comparative indemnity that may be pressed on a concurrent tortfeasor. (*American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d at pp. 603-604; cf. Code Civ. Proc., § 877, subd. (b).)

Not surprisingly the state prefers that the arithmetic include the judgment-proof tortfeasors so that the state's share of liability would be limited to its share of fault (10 percent) irrespective of whether others can pay. Agreeing with the state, the trial court entered judgment for Lyly & Sons against the state in the amount of $87,500.

Under the doctrine of joint and several liability one of many tortfeasors may be saddled with paying the injured party more than the share that would be apportioned to that tortfeasor on a comparative negligence basis. But there is nothing intrinsic to that doctrine which requires such a tortfeasor to continue in the indemnity action to bear alone the burden of the judgment-proof tortfeasor. As the name implies, the purpose of indemnity actions is to allow an equitable balancing of the books among those liable for the injury.

Just a few months ago in *Paradise Valley Hospital* v. *Schlossman* (1983) 143 Cal.App.3d 87 [191 Cal.Rptr. 531], the Court of Appeal addressed the problem of who pays for the percentage of fault attributable to judgment-proof tortfeasors. There, two fault-free plaintiffs brought a negligence action against a hospital and two doctors, Lurie and Schlossman. The jury awarded plaintiffs $1.5 million and apportioned liability: the hospital 10 percent ($150,000); Lurie 40 percent ($600,000); and Schlossman 50 percent ($750,000). To satisfy the judgment, the hospital paid $500,000 and Lurie paid $1 million; Schlossman filed a petition for bankruptcy. Both the hospital and Lurie cross-complained against Schlossman, and the hospital also cross-complained against Lurie. With respect to the latter action, the trial court dismissed the claim. The Court of Appeal reversed, holding that the hospital was entitled to recover from *Lurie* an amount equal to the difference between what the hospital paid and the amount due the hospital as determined on the basis of the ratio of responsibility between the hospital and Lurie.[2] (*Paradise Valley Hospital, supra,* 143 Cal.App.3d at p. 94.)

Lurie, unlike the state in the case at hand, did not attempt to escape all liability for the portion of fault attributable to the judgment-proof tortfeasor. Instead, he argued that this share should be divided equally between the two solvent tortfeasors. Rejecting this split-the-difference-equally theory, the Court of Appeal held that "[a]n insolvent defendant's shortfall should be shared proportionately by the solvent defendants as though the insolvent or absent person had originally not participated." (At p. 93.)

---

[2]The calculation is identical to the instant case: a 4:1 ratio: the hospital's fault was 10 percent, Lurie's was 40 percent, and the insolvent's was 50 percent. Hospital paid $500,000 or $200,000 in excess of 20 percent, and Lurie paid $1 million or $200,000 less than 80 percent. (*Paradise Valley Hospital, supra,* 143 Cal.App.3d at p. 89, fn. 1.)

The *Paradise Valley Hospital* rule and analysis are apposite to the facts at hand and are clearly in the chain of reasoning of *Li* and *American Motorcycle*. The rule is that: (a) the solvent tortfeasors among themselves in an indemnity action must share in direct proportion to their respective degree of fault the liability of their judgment-proof coactors; and, (b) this computation must be made as though the judgment-proof tortfeasors had not been involved in the accident.

That such a rule is more equitable than the state's suggested formula is easily demonstrated by assuming facts identical to the present case, with the exception that the plaintiffs name only the state as a defendant. If the settlements were the same and the state paid plaintiffs the same amount as did Lyly & Sons (i.e., $875,000 or 100 percent of plaintiffs' actual damages), then in the state's cross-complaint for partial indemnity against Lyly & Sons, the state would be liable for 60 percent of the damages, even though it was only 10 percent at fault. In other words, under the trial court's solution, the burden of covering the insolvent tortfeasor's share falls only on the party picked by the plaintiff to be the named defendant. Caprice is not often justice.

As a fall-back position the state contends that if this court adopts the rule of proportionate liability announced in *Paradise Valley Hospital*, the allocation must include plaintiffs who are at fault.[3]

We find the state's suggestion to be at war with the explicit rationale of *American Motorcycle*: to encourage settlements the rule must be that one who enters into a good faith settlement must also be discharged from any claim for partial or comparative indemnity that may be pressed by a concurrent tortfeasor. (*Id.,* 20 Cal.3d at p. 604.) It is not only the defendant in the main action who has an interest in finality of settlements. Few things would be better calculated to discourage settlement of disputed tort claims by injured plaintiffs than knowledge that such settlement lacked finality and would lead to further litigation and perhaps liability. The rule suggested by the state would eliminate any incentive an injured plaintiff would have to settle with fewer than all of the tortfeasors. We understand *American Motorcycle* to have ended the discussion definitively.

Finally, the state urges that imposing liability on it for more than its 10 percent share of fault violates the statutory rule that *contribution* cannot exceed a party's pro rata share. (Code Civ. Proc., §§ 875 and 876.) In

---

[3]In *Paradise Valley Hospital,* the plaintiffs were fault free whereas here, one plaintiff (Forsyth) is at fault. No determination of the degree of his fault was made below except to the extent that he and the other settling tortfeasors jointly shared 50 percent of the liability.

response to the same contention in *Paradise Valley Hospital, supra,* 143 Cal.App.3d at page 93, it was explained: ". . . *American Motorcycle,* after masterful analysis, held these code sections did not preclude the recovery of partial indemnity from a concurrent tortfeasor on a comparative fault basis. *(Id.,* at pp. 599-604.) A fortiori these statutes do not interdict the extension of this sound rule to cover a shortfall caused by an insolvent defendant. . . ." (Fn. omitted.)

The judgment is modified: (a) by deleting from the last paragraph thereof the figure "$87,500"; and, (b) by substituting therefor the figure "$175,000." As so modified the judgment is affirmed. Appellant shall recover his costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 21, 1983, and respondent's petition for a hearing by the Supreme Court was denied December 14, 1983.