[Civ. No. 65868. Second Dist., Div. Six. Nov. 14, 1983.]

ANNIE MARIE AMBRIZ et al.,
Plaintiffs, Cross-defendants and Appellants, v.
KERRY A. KRESS et al.,
Defendants, Cross-complainants and Respondents.

COUNSEL

Keith P. Brown for Plaintiffs, Cross-defendants and Appellants.

Kremser & Howard and Paul E. Kremser, Jr., for Defendants, Cross-complainants and Respondents.

---

OPINION

**GILBERT, J.**—How should damages be apportioned among joint tortfeasors? This is one of the disturbing conundrums to emerge from *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], and *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. In *Paradise Valley Hospital* v. *Schlossman* (1983) 143 Cal.App.3d 87 [191 Cal.Rptr. 531], the appellate court, in sorting out the issues of contribution and indemnity among joint tortfeasors, answered the question, "should solvent defendants proportionately share liability for a shortfall caused by an insolvent defendant?" The answer was an unequivocal "yes."

Here, we ponder a variation on this theme. Is it ever proper for a plaintiff, along with other solvent defendants, to share in the shortfall caused by an insolvent defendant? We too, are prepared to squarely answer the question. Yes . . . and no. We take this firm stand because it is possible for the positions of the majority and the dissent in *American Motorcycle* to coexist in the same case.

This appeal is from a judgment for contribution that arose out of a cross-complaint for partial equitable indemnification against Annie Marie Ambriz, one of three plaintiffs in the initial action for negligence. That lawsuit concerned an accident which took place on October 20, 1974. Mrs. Ambriz was the driver. With her was her son Patlan. Her husband Jesus Ambriz observed the immediate aftermath of the accident which had occurred in front of the Ambriz residence. His cause of action was for emotional distress and loss of consortium. Other parties to the action were defendant and cross-complainant Larry Lynn McDowell who filed a cross-complaint for partial equitable indemnification against Mrs. Ambriz and defendant Kerry A. Kress.[1]

The jury awarded damages to the three plaintiffs as follows: Mrs. Ambriz $300,060, Patlan $81,000 and Mr. Ambriz $22,670. The jury apportioned responsibility among the parties by assessing percentages of comparative

---

[1]McDowell also filed a cross-complaint against defendants Clyde and Betty Miller doing business as Bonnie and Clyde. The jury awarded judgment to Bonnie and Clyde.

negligence as follows: Mrs. Ambriz 20 percent, Kress 70 percent, McDowell 10 percent.[2]

Kress carried minimum 15/30 financial liability insurance, but prior to trial his insurance carrier was in receivership. Mrs. Ambriz's insurer then paid $30,000 under the provision for uninsured motorist coverage for which it received a reimbursement of $15,000 from the California Insurance Guarantee Association. McDowell ultimately paid a total sum of $317,071.87 to the Ambriz plaintiffs on April 16, 1979. This sum included various cost bills but was $30,000 short because McDowell claimed a credit for the uninsured motorist proceeds. The trial court denied McDowell's motion to compel full satisfaction of judgment. This ruling was affirmed on appeal on May 27, 1980. On July 17, 1980, plaintiffs filed a full satisfaction of judgment.

On April 3, 1981, McDowell and his insurer, United Pacific/Reliance Insurance Company (hereinafter referred to collectively as McDowell) filed a motion for contribution against Mrs. Ambriz. He argued that since she was 20 percent negligent and McDowell was only 10 percent negligent, their proportionate responsibility for the 70 percent shortfall caused by the insolvency of Kress, vis-à-vis, plaintiffs Patlan and Mr. Ambriz, should be borne in a ratio of two to one. Therefore, he argued that in computing the percent of responsibility chargeable to Mrs. Ambriz for damages suffered by Patlan and Mr. Ambriz, she should be liable for two-thirds of the Kress deficit, plus her 20 percent of contributory negligence.[3] The combined total to be borne by Mrs. Ambriz under McDowell's theory is $65,478.67, which equals 63 percent of the total damages awarded to Patlan and Mr. Ambriz.

---

[2]The jury arrived at these determinations by answering the following issues:

"Issue No. 4: Did the negligence of plaintiff Annie Marie Ambriz contribute as a legal cause of her injury and the injury to Patlan Ambriz?"

"Answer: 'Yes' or 'No.'"

"Answer: Yes."

"Issue No. 6:

"Assuming the combined negligence of plaintiff Annie Marie Ambriz and of the defendant or defendants whose negligence contributed to the plaintiffs' injuries to be 100%, what percentage of such combined negligence is attributable to the plaintiff Annie Marie Ambriz and what percentage is attributable to each of the other defendants whose negligence was a legal cause of the plaintiffs' injuries?"

In response to this question, the jury arrived at its percentages of negligence.

[3]McDowell first credits Kress with $20,000 because $5000 was paid by Kress to McDowell and $15,000 was paid by the California Insurance Guarantee Association. McDowell then computed a pro rata share of the costs, leaving a balance of damages to Patlan of $52,295.90, and a balance of damages to Mr. Ambriz of $14,636.39. His contention is that Mrs. Ambriz should be liable for two-thirds of the Kress deficit for Patlan, or $34,863.93, plus her 20 percent of contributory negligence, which is $16,296.31. This leaves a total of $51,160.24. Using this same formula for Mr. Ambriz, Mrs. Ambriz's liability for two-thirds of the Kress deficit is $9,757.59, plus her 20 percent of contributory negligence, which is $4,560.95, leaving a total of $14,318.54.

The trial court rendered judgment for contribution in the amounts requested by defendant McDowell.

■ Mrs. Ambriz contends, among other things, that the trial court improperly followed the dissent in *American Motorcycle* by increasing her comparative fault from 20 percent to 63 percent. We disagree with Mrs. Ambriz's contentions and affirm the judgment for contribution entered by the trial court.

## DISCUSSION

In *Li*, our Supreme Court replaced the complete defense of contributory negligence with "pure" comparative negligence, "the fundamental purpose of which shall be to assign responsibility and liability for damage in direct proportion to the amount of negligence of each of the parties." (*Li* v. *Yellow Cab Co.*, *supra*, 13 Cal.3d 804, 829.) In *American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d 578, the Supreme Court held that *Li* did not signal the abandonment of joint and several liability of concurrent tortfeasors.

The court pointed out that even though it might be possible to assign percentages of relative culpability among negligent defendants, that does not suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury to a plaintiff. The court reasoned that a plaintiff's recovery should only be diminished in proportion to his degree of fault for the accident. He should not, however, be forced to bear a portion of the loss of a financially insolvent defendant because "a plaintiff's negligence relates only to a failure to use due care for his own protection, while a defendant's negligence relates to a lack of due care for the safety of others." (*American Motorcycle Assn.* v. *Superior Court*, *supra*, 20 Cal.3d 578, 589.)

Mrs. Ambriz argues that the trial court is disregarding the principle enunciated in *American Motorcycle* that a plaintiff's recovery should not be reduced by an amount greater than the percentage of his or her own contributory negligence. What she fails to realize, however, is that her award is not diminished beyond her 20 percent share of the negligence. Her status entitles her to this award. Her status, however, vis-à-vis, co-plaintiffs Patlan and Mr. Ambriz, is a different matter. In that role, she is not a plaintiff, but a cross-defendant.

■ We note, as did the court in *Schlossman*, that *American Motorcycle* permits partial indemnity among concurrent tortfeasors on a comparative fault basis. "In *American Motorcycle* joint and several liability principles are cojoined with the concept of liability governed by proportionate fault to

which is added the right of equitable contribution. These premises, so constellated, give form and outline for the next logical extension and application of these rules. An insolvent defendant's shortfall should be shared proportionately by the solvent defendants as though the insolvent or absent person had originally not participated." (*Paradise Valley Hospital* v. *Schlossman, supra,* 143 Cal.App.3d 87, 93.)

This reasoning should apply to all defendants, including any cross-defendant who, fortuitously, happens to be a plaintiff. This approach satisfies the majority opinion in *American Motorcycle* by respecting the principle that a plaintiff is entitled to relief for indivisible injuries suffered as the result of the combined negligence of joint tortfeasors. It also addresses some of the concerns expressed in the dissent in *American Motorcycle* which decried the foisting of large percentages of fault onto a marginally negligent defendant.

The view of the landscape in the case at bench depends on one's perspective. Just as in the Escher lithograph, "Waterfall," water appears to flow uphill or downhill, depending upon how one looks at the lithograph at a particular moment, so here, Mrs. Ambriz is a plaintiff from one perspective, but she is also a cross-defendant from another. That she can be both is neither inconsistent nor paradoxical. She is a cross-defendant vis-à-vis her coplaintiffs, and must bear the burden of a shortfall caused by the insolvency of another defendant in direct proportion to her respective degree of culpability. (*Paradise Valley Hospital* v. *Schlossman, supra,* 143 Cal.App.3d 87.) She is no less a cross-defendant merely because she is also a plaintiff. In many cases a litigant is a plaintiff only because he or she was the first to file a complaint. A defendant with a valid cross-complaint could just as easily have been the plaintiff. In the race to the courthouse a defendant should not be penalized because traffic was greater at his end of town.[4]

Mrs. Ambriz contends that McDowell is barred from contribution because the cross-complaint was framed in terms of equitable indemnity. When the court in *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 591, examined contribution and indemnity, it concluded that "the dichotomy between the two concepts is more formalistic than substantive." What McDowell seeks is partial indemnification or contribution among the

---

[4]Most writers agree that where there is a fault-free plaintiff, any shortfall should be shared by the solvent defendants in proportion to their relative proportionate degree of culpability. Professor Zavos, however, argues that a plaintiff at fault should be considered for purposes of joint and several liability the same as a concurrent tortfeasor along with other defendants. (See, e.g., Zavos, *Comparative Fault in the Insolvent Defendant: A Critique and Amplification of American Motorcycle Association v. Superior Court.* (1981) 14 Loyola L.A. L.Rev. 775, 817; Fleming, *Forward: Comparative Negligence at Last—By Judicial Choice* (1976) 64 Cal. L.Rev. 239, 251-252.)

solvent tortfeasors. The court in *American Motorcycle* concluded that in light of the principles enunciated in *Li,* equitable indemnity should be modified to permit partial indemnity among concurrent tortfeasors on a comparative fault basis.

Appellant further contends that the judgment for contribution is null and void because it purports to be in favor of a cross-complainant (United Pacific/Reliance Insurance Companies) and against the insurer of the cross-defendant, neither of whom were parties to the action. Further, she contends it is unenforceable because it orders payment of indefinite amounts which might arise from future litigation.[5] The judgment specifically provides for recovery from Mrs. Ambriz. The judgment is not invalid because it correctly states that the insurer is liable for the insured's judgment, subject to the terms and limitations of the policy of insurance. (Ins. Code, § 11580, subd. (b)(2); *Jess* v. *Herrmann* (1979) 26 Cal.3d 131 [161 Cal.Rptr. 87, 604 P.2d 208].)

The provision in the judgment that refers to the possibility of additional recovery from Mrs. Ambriz's insurer for a "bad faith" failure to settle the contribution claim is not a judgment on a case yet to be tried. Mrs. Ambriz assigned to McDowell an inchoate claim for bad faith on the part of her insurer. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173].) The judgment merely states that the assignment takes effect if in some future case it is determined that Mrs. Ambriz's insurer acted in bad faith. (*Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].)

We further reject Mrs. Ambriz's contention that the judgment for contribution releases her from all liability. ■ The judgment only acknowledges that McDowell agrees to limit his recovery to those sums he may recover from Mrs. Ambriz's insurance carrier. Such an arrangement between McDowell and Mrs. Ambriz is acceptable and legitimate under the law. (*Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d 788.)

---

[5]The judgment reads:

"IT IS ORDERED that the Motion be and it hereby is granted and that cross-complainants (by and through their insurance carrier, UNITED PACIFIC/RELIANCE INSURANCE COMPANIES, which carrier is subrogated to the rights of cross-complainants herein) have and recover judgment against cross-defendant ANNIE MARIE AMBRIZ in the sum of $51,160.24 as contribution towards the judgment paid to PATLAN RICHARD AMBRIZ and $14,318.54 towards the judgment paid to JESUS AMBRIZ, with interest from the date of this Judgment.

"IT IS FURTHER ORDERED that such recovery of contribution be limited to recovery from ANNIE MARIE AMBRIZ' insurer to the extent of the applicable coverage plus any additional sums which may be determined to be owing for said insurer's failure to settle the contribution claim within the applicable policy limits, and that no contribution be recoverable from ANNIE MARIE AMBRIZ individually."

■ The trial court properly awarded judgment for contribution against Mrs. Ambriz as to the damages for loss of consortium sustained by Mr. Ambriz. Although the jury responded by special verdict that the negligence of Mrs. Ambriz contributed to the injury of Patlan, no direct question was put to the jury as to whether her negligence contributed to Mr. Ambriz's injury. The jury's response, however, on issue number 6 of the verdict stated that the percentage of *combined negligence* attributable to Mrs. Ambriz in causing plaintiffs' injuries was 20 percent.* The clear inference from this response is that Mrs. Ambriz's negligence contributed 20 percent to the injuries of all plaintiffs, including Mr. Ambriz.

Mrs. Ambriz further argues that McDowell is not entitled to contribution for the judgment of Mr. Ambriz in any amount because one spouse's recovery for loss of consortium is not subject to reduction by the proportion of negligence attributable to the other spouse. (*Lantis* v. *Condon* (1979) 95 Cal.App.3d 152, 157 [157 Cal.Rptr. 22].)

In *Lantis,* the court held that the husband's contributory negligence could not be imputed to his wife in her action against defendants for loss of her husband's consortium. As McDowell correctly points out, however, Mr. Ambriz has been made whole for his cause of action for loss of consortium. It is only coincidental that his wife happens to be a joint tortfeasor from whom McDowell seeks contribution. The court in *Lantis,* concluded that its holding would not reward the negligent spouse for his or her own negligence because "a defendant [may] cross-complain against the contributory negligent spouse for indemnity." (*Lantis* v. *Condon, supra,* 95 Cal.App.3d 152, 159, citing *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578, 591.)

■ We disagree with Mrs. Ambriz's contention that McDowell's motion for contribution was barred by the statute of limitations. While it is true that a large portion of the judgment was paid in 1978, acknowledgment of full satisfaction of judgment was not filed until July 17, 1980. In the interim the court of appeal decided whether McDowell was entitled to a $30,000 credit. Under Code of Civil Procedure section 916, subdivision (a) the perfecting of the appeal stayed proceedings in the trial court upon matters affected by that appeal. The total sum to which the right of contribution applied could not be determined until the appeal was decided. The time this matter was on appeal is excluded from the time in which the motion for contribution had to be brought. (Code Civ. Proc., § 356; *Hoover* v. *Galbraith* (1972) 7 Cal.3d 519 [102 Cal.Rptr. 733, 498 P.2d 981].) The motion for contribution was made less than one year after the full satisfaction of judgment was filed.

---

*See footnote 2.

The trial court properly apportioned costs in its judgment of contribution so that McDowell only received that portion attributable to Mrs. Ambriz's share of the costs of Patlan and Mr. Ambriz, a total of $616.31.

The judgment is affirmed.

Stone, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied December 7, 1983, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied February 29, 1984. Bird, C. J., was of the opinion that the petition should be granted.